## WOOD *a.* HOLLISTER.

*Supreme Court, First District ; Special Term, April,* 1856.

CREDITOR'S BILL.—PLACE OF TRIAL.—TITLE TO REAL PROPERTY.

An action brought to procure the judgment of the court that a conveyance of land made by the defendant was fraudulent, that the defendant holds the land fraudulently, and that he be declared to hold it in trust for the plaintiff, is an action brought for the determination of an interest in real property.

The county where the land or some part thereof is situated, is the proper place of trial for such an action.

Motion to change the place of trial.

This action was brought by Ross W. Wood and Alexander H. Grant against Frederick Hollister and Jane his wife. Both the plaintiffs resided in New York city; both the defendants in Utica, Oneida county. New York county was named as the place of trial.

---

The complaint was in the nature of the former creditor's bill. It stated the recovery of two judgments by plaintiffs against the defendant Frederick,—the issuing of executions thereon in Oneida county, and their return unsatisfied,—and proceeded to aver that prior to these judgments the defendant Frederick purchased certain specified lands on Genesee and King streets in Utica,—that he afterwards, and two years prior to the recovery of plaintiffs' judgments, conveyed them to Roscoe Conkling, who immediately conveyed them to the defendant Jane. These conveyances were alleged to have been made without consideration and for the purpose of defrauding the plaintiffs.

The complaint demanded, among other things, that it be adjudged that the conveyances from the defendant Frederick to Conkling, and from Conkling to the defendant Jane, were fraudulent, and that she be declared to have taken in trust for the plaintiffs and other creditors. It also prayed an injunction and the appointment of a receiver; and that the defendant Jane be adjudged to convey and deliver to the receiver the real estate in Utica, mentioned in the complaint.

The defendants' attorneys, Messrs. Conkling and Throop, of Utica, served a written demand that the trial of the action be tried " in the proper county, to wit, the county of Oneida."* The demand being uncomplied with, the defendants now moved, *before answering*,† that the place of trial be changed.

---

* Beardsley a. Dickerson, (4 *How. Pr. R.* 81), has been quoted in several of the treatises as deciding that it is improper to name in the demand, the county in which the defendant desires the trial, but that he should simply ask that it be had *in the proper county.* That case establishes no such doctrine. In that case Rensselaer county was named in the complaint as the place of trial. The defendant served a demand that the trial be had in the county of New York. It appeared on the motion, that Saratoga was the proper county. It was held that the demand that the trial be had in New York, would not support an application to change the place of trial to Saratoga.

† There has been some difference of opinion on the question whether these motions should be made before or after answer. The true solution of the difficulty appears to be as follows.

There is a substantial distinction between a motion based on the ground that the plaintiff has brought his action originally in a wrong county, and a motion based on the convenience of witnesses, or the suggestion that in the county named an impartial trial cannot be had. (The Vermont Central R. R. Co. a. The Northern R. R.

*R. Conkling*, for the motion, contended that by section 123 of the Code, subdivision 1, the action was triable only in Oneida county. It was an action brought for the recovery of real

Co., 6 *How. Pr. R.*, 106). A change from an improper county to the right one is matter of right with the defendant. A change from the right county to another for the more convenient administration of justice, is a matter within the discretion of the court upon all the facts. The first may be considered a motion to *correct*, the second to *change*, the place of trial.

A motion based on the convenience of witnesses, or other similar ground, ought not to be made before issue. (Lynch a. Mosher, 4 *How. Pr. R.*, 86 ; Merrill a. Grinnell, 10 *Ib.*, 32 ; and see Hinchman a. Butler, 7 *Ib.*, 462). This is all that can be gathered from rule 44 of the Supreme Court, or from Beardsley a. Dickerson. (4 *How. Pr. R.*, 81), Mixer a. Kuhn, (*Ib.*, 409), or from Hartman a. Spencer, (5 *Ib.*, 135). The reason of the case supports this rule, because until issue is joined it cannot appear what witnesses will be material.

But a motion made on the ground that the plaintiff has laid his action originally in a wrong county, may, and indeed ought, to be made before issue. (Schenck a. McKie, 4 *How. Pr. R.*, 246 ; Hubbard a. The National Protection Ins. Co., 11 *Ib.*, 149. See also Toll a. Cromwell, (12 *Ib.*, 79,) where such a motion was entertained before issue). Principle requires this to be allowed, because the error can as well be corrected before issue as after. And the inconvenience to the defendant, of attending in the wrong county to interlocutory matters, applications for provisional remedies, &c., made before issue, might be great. Under the old practice, and under the judiciary act, such a motion was properly made before issue. The language of § 126 indicates this also ; for thereby the action is liable to be tried in the county named in the complaint, although a wrong one, unless defendant demands a change *before* the time for answering expires, and a change by consent or order be *thereupon* made. The cases of Beardsley a. Dickerson, (4 *How. Pr. R.*, 81) ; Mixer a. Kuhn, (*Ib.*, 409) ; Hartman a. Spencer, (5 *Ib.*, 135) ; and rule 44 of the Supreme Court, which have been referred to as requiring such a motion to be made after issue, do not in fact establish anything more than that a motion for convenience of witnesses, and the like, cannot be made until after issue.

On such motion to change the place of trial, made before issue, the convenience of witnesses should not be regarded in opposition. (Moore a. Gardiner, 5 *How. Pr. R.*, 242 ; Park a. Carnley, 7 *Ib.*, 355 ; Hubbard a. The National Protection Ins. Co., 11 *Ib.*, 149). Though it may be, where such a motion is delayed till after issue. (Mason a. Brown, 6 *Ib.*, 481). The simple question on such a motion, is, whether the county named is a county in which by law the plaintiff is entitled to have the action tried. If it is not, the defendant is entitled to a change. After issue the plaintiff may move for a change for convenience. The injustice of allowing the plaintiff to meet the defendant's motion to change the place of trial to the proper county, by affidavits of material witnesses in that in which he has brought his action, is this,— that the plaintiff cannot know, before answer, but that the defendant will admit the very facts for which his witnesses are needed; and the defendant can have no opportunity, except as matter of favor, to answer the affidavits as to plaintiff's witnesses.

property in that county, or of an estate or interest therein or at least for the determination of such right or interest.

*W. Leonard* and *William Tracy* opposed. I. Section 123 of the Code, subdivision 1, has no reference to such actions as this.

It is a substantial copy of 2 Revised Statutes, 409, section 2, in relation to venues, under the old system of pleading. It has reference to actions "for the recovery of real property, or of an estate or interest therein"—[an ejectment]—"or for the determination in any form of *such right* or *interest*"—[an action to determine the title]. It embraces only actions for the title—or for the determination of an *estate* or an *interest in an estate.* The provision of the Revised Statutes extended to the trial of all issues by jury which involved these questions, whether from law or chancery. Yet it was never understood nor held to apply to a case where the point of the action was to reach a judgment debtor's property, in his own or fraudulent assignees' hands, although a part of it may have been real estate.

II. This action is not for the recovery of the real estate mentioned in the complaint, or of any interest therein. It is to compel the defendants to produce and give to a receiver the judgment debtor's property in their hands. No judgment can be given by which the plaintiffs can recover the real estate held by Mrs. Hollister fraudulently, nor any interest therein. So far as she is concerned, the only questions in the case are, whether she rightfully holds the real estate which the plaintiff says she has the title to, and whether she is the rightful, equitable owner of the claims she is prosecuting. If she does not, but holds it as a fraudulent trustee, the judgment will be—not that the plaintiffs recover the land she holds, nor any interest or estate in it—but that she give over to the receiver the title to be administered by him.

III. Under the Revised Statutes, each vice chancellor had, exclusive of all other vice chancellors, jurisdiction of cases " where the subject matter of controversy shall be situated within such circuit." Yet it was never supposed that a vice chancellor might not entertain jurisdiction of a creditor's bill, where a part of the object was to compel a fraudulent assignee

or grantee of the judgment debtor to convey lands held by him anywhere in the state. (Varick v. Dodge, 9 *Paige*, 149).

IV. This complaint is in the nature of a creditor's bill before the statutory judgment creditor's bill, as well as of a statutory creditors' bill. (Chatauque Bank v. White, 2 *Selden*, 236). Its object is not a recovery at all. It is to compel a fraudulent trustee to hand over the fund in his hands.

*Benj. V. Abbott*, in reply.—That such an action as the present is embraced by section 123, was decided in Ring v. McCoun, (3 *Sandf. S. C. R.*, 524). To the same effect, substantially, is Mairs v. Remsen, (3 *C. R.*, 138). The soundness of these decisions is apparent from a review of the distinction between local and transitory actions, as it existed prior to the Code. Such analogies as we can draw from the old practice in respect to venue, support the doctrine contended for by the defendants. And although they would not be conclusive were the question a new one under the Code, they may be properly referred to as sustaining the decisions cited.

II. Such analogy as can be. drawn from the principles of the *common law* respecting venue, sustains us. 1. All common law actions were originally local. But to further the ends of justice, certain actions were at a later period termed transitory, and were allowed to be tried in other counties than those in which they arose. (Livingston v. Jefferson, 1 *Brock.* 203). And in respect to legal actions relating to *land*, the principal test for discriminating the local action from the transitory was this. Where the right of action was founded on privity of *estate*, it was *local;*—it was *transitory* where the right was based on privity of *contract.** Now if any analogy can be

---

* Thus debt for rent brought by the *assignee* of the reversion against the lessee, was local;—for assignment destroyed the privity of contract. (Bord v. Cudmore, *Cro. Car.*, 184 ; Thursby v. Plant, 1 *Saund.*, 237 ; Thrall v. Cornwall, 1 *Wils.* 165 ; Henwood v. Cheeseman, 5 *Serg. & R.*, 500). So was an action for breach of covenant, brought by the covenantee against the covenantor. (Lienow v. Ellis, 6 *Mass.*, 331 ; White v. Sanborn, 6. *N. H.*, 220 ; Birney v. Haim, 2 *Litt.*, 263). " Because," say the court, in Birney v. Haim, " the action is founded, not on any contract made between the assignee of the covenantee and the covenantor, but on the covenant, which runs with the land, and to which the plaintiff has subsequently become a party without the express consent of the defendant." So also, covenant for rent, by lessor against the executor of lessee, sued as assignee in respect to his

drawn from this test in legal actions, to the equitable suit by creditors' bill, it would support this motion. For it is not through any privity of *contract* that the plaintiffs seek satisfaction of the debt out of the lands held by the defendant, Jane.

III. The analogies of the former equity practice are more strongly in our favor. In chancery all suits were originally *transitory;* or rather they were *personal,* the decree effecting the person of defendant merely, and having no power to bind his estate directly. And even after the power of chancery to bind real property directly became established, there was for a long time nothing in English chancery practice analogous to the venue at common law; for the reason that as the court did not travel on circuit, nor hold jury trials, nor subpœna witnesses for *viva voce* examination before the court, there was no occasion for laying venue in one county rather than another, nor was it practicable, to draw any such distinction. There were cases, however, in which it became necessary to direct a feigned issue for jury trial in a case relating to lands,\* and in such cases it was held that the venue must be laid in the county where the lands lay. The analogy from this rule would require the *trial* at least, of the present action to be had in Oneida County.

IV. Another class of questions somewhat analogous to those of venue at common law, arose in chancery when the complainant sought a decree which would in some sense effect

---

privity of estate, was also held local. (Tremeere *v.* Morrison, 4 *Moore & S.,* 609). On the other hand, the following actions were by the application of the same test held transitory, as being founded on privity of contract. Assumpsit for use and occupation. (Low *v.* Hallett, 2 *Cai.,* 375 ; Corporation of New York *v.* Dawson, 2 *Johns. Cas.,* 335): Assumpsit for rent by lessor against lessee. (Bracket *v* Alvord, 5 *Cow.,* 18). Assumpsit for not repairing leasehold premises. (Buckworth *v.* Simpson, 1 *Crompt., M. & R.,* 834).

\* Such for example was the case where a rector sued for his tithes. and the defendant plead a *modus* or composition by which the tithes payable upon his lands had been fixed at a certain sum, and payment according to the modus ; and the issue was upon the modus. The venue of the feigned issue must in such case, be laid in the county where the lands lay, unless reason to the contrary appeared upon the bill itself. If there were reasons outside of the bill why the venue should be otherwise directed, it must be so laid at first, and a special application afterwards made to change it, (2 *Daniell's Ch. Pr., by Perkins,* 1295 ; *tit. Venue, and notes y. and z.*)

lands laying without the kingdom or State to which the juris-
diction of the court was confined.   And the rule in these cases
was, that if the decree was to operate *in rem*, the court had
no jurisdiction; but if *in personam* the bill might be enter-
tained notwithstanding the lands were extra-territorial.*   Now
if we can properly reason by analogy from this rule, and may
imagine the city and county of New York to be an independ-
ent State or kingdom, distinct from the county of Oneida, and
the Supreme Court for this district to be its Court of Chancery,
and this question to be presented on demurrer to the jurisdic-
tion—it is plain that the bill must be dismissed.   For though
the defendants might—if they resided within the jurisdiction,
which they do *not*—be decreed to execute the conveyance
prayed, yet so much of the bill as seeks to have the title of
the defendant, Jane, adjudged fraudulent and void, and
declared to be holden in trust, affects the *land* directly, and
not the person.

V.  A third class of cases more closely analogous to the pre-
sent, arose under the organization of the late Court of Chan-
cery in this State.   That court being organized in circuits,
and its powers being possessed and exercised by vice chan-
cellors, one for each circuit, there was an opportunity for
question as to the jurisdiction of the vice chancellor in one
circuit, over suits affecting lands in other circuits.   And this
question was closely analogous to that presented under our
present system, when the plaintiff seeks to try in one county,

---

* Chancery might decree performance of a *personal* act which might be done
anywhere, if the court had jurisdiction of the *person* required to perform it,
although it might relate to lands abroad.   But no decree directly affecting such
lands could be made.  (Dunn *v.* M'Millan, 1 *Bibb.*, 409; Dicken *v.* King, 3 *J. J.
Marsh*, 591; Lewis *v.* Morton, 5 *Monr.*, 3; Austin *v.* Bradley, 4; *Ib.* 434; Shat-
tuck *v.* Cassidy, 3 *Edw. Ch. R.*, 152; and see Ward *v.* Arredondo, *Hopk.*, 213;
Mitchell *v.* Bunch, 2 *Paige*, 606; Massie *v.* Watts, 6 *Cranch*, 148).   Thus chan-
cery might decree specific performance or compensation in damages, of a contract
relating to land wherever situate.  (Dunn *v.* M'Millen, 1 *Bibb.*, 409; Auchincloss
*v.* Nott, 12 *N. Y. L. O.*, 119).   It likewise might entertain a bill to procure a mis-
take in the quantity of foreign lands sold by defendant to plaintiff, to be rectified,
and a portion of the purchase money to be refunded.  (Williams *v.* Burnett, 6 *Monr.*
322).   But a bill for enforcing a supposed equitable lien by a *sale* of the land was
local, (Kendrick *v.* Wheatley, 3 *Dana.*, 34).

Wood a. Hollister.

:an action affecting lands lying in another. It was under that system of circuits that the case of Varick v. Dodge, referred to on the other side, was decided; which case, when the changes which have since been made in the law, are consid-·ered, seems to sustain this motion.

The statute of that day gave each vice chancellor jurisdiction in three cases. 1. Where the causes and matters arose within his circuit. 2. Where the subject matter of the suit was situated there. 3. Where the defendants or either of them ·resided there. Under this statute the chancellor decided, in Varick v. Dodge, that if the cause of suit *arose* within the ·circuit, (as was the fact in that case),* it was not necessary to the vice chancellor's jurisdiction that the property sought to be reached should be situated there. In applying this case it ·is important to notice that if we imagine the provisions of the :statute of that day to be modified until they correspond with the law now in force, the decision of Varick v. Dodge, must be just the reverse of what it was. Thus if we strike out from the statute as just now quoted, the first and third clauses, ·—so as to leave a jurisdiction in the vice chancellor, only where the subject matter of the suit is situated within his ·circuit—then it is plain that the decision of the chancellor :must be that there was no jurisdiction.

· The true ground on which this motion rests is, that by the plain intent of section 123, this action is triable in Oneida ·county. These analogies of the old practice are only referred to as useful to show that this construction of the statute, which is dictated by the very words themselves, is also conformable ·to long established principles of jurisprudence.

DAVIES, J.—The complaint is filed, to procure the judgment ·of the court that certain conveyances therein mentioned of lands

---

* The case was on a creditor's bill brought in the fifth circuit. It showed the recovery, filing, and docketing of judgment, the issuing and return unsatisfied of ·execution, &c., all of which proceedings were taken within the fifth circuit. The defendant pleaded to the jurisdiction on the ground that he was a resident of the first circuit. The chancellor held that the recovery of judgment and issuing and return of execution were the only causes of suit in the cases which could be said to have *arisen* any where; and that these having arisen in the fifth circuit, the vice ·chancellor had jurisdiction.

situated in the city of Utica, were fraudulent as against the plaintiffs, and that one of the defendants now holds and has always held the legal title to said lands fraudulently, and that it be declared by the court that the same are held in trust for the plaintiffs.

Section 123 of the Code provides that actions are to be tried in the county where the subject matter thereof is situated, in the cases provided by statute. 1. For the recovery of real property or of an estate or interest therein or *for the determination in any form of such right or interest.*

Is this an action for the determination of any right or interest in real property? If so, the Code is imperative that it must be tried in the county where the property is situated.

The complaint seeks to obtain the judgment of this court that certain conveyances stated therein are fraudulent, and by this means seeks to appropriate the real property to the payment of the plaintiffs' judgment. The plaintiffs insist that the rights of the defendants in said real property are to be subordinated to theirs.

From this statement of the plaintiffs' claim, it is quite manifest that their action is for the determination of interests in real property, and must therefore be tried in the county where it is situated. This point was expressly decided by Edwards, J., in Morris *v.* Remsen, (3 *C. R.*, 138).

But if there was any doubt on this point, it is I think entirely removed by the other claim of the plaintiffs that one of the defendants may be declared to hold the said real property in trust for them ; in other words, that she be declared trustee of said real property and they the cestui que trust, and entitled as such to an interest therein. Certainly no one can doubt that the establishment of this claim involves the determination of an interest in real property.

I could not hesitate in the absence of any authority, in saying that this case came directly within the letter of subdivision 1, of section 123, of the Code. But the case of Ring *v.* M'Cann, (3 *Sand. S. C. Rep.*, 524), is an authority in point.

In that case the complaint showed a purchase of a farm in Queen's county, made by the defendant, who took the deed in his own name, but made with the funds of Mr. John Mason,

and upon a general trust for the benefit of James Mason, son of John. The plaintiff, who claimed as grantee of James the *cestui que trust*, prayed that the defendant might be directed to convey the legal title of the farm to the plaintiff, or to pay the plaintiff the money advanced by John Mason.

The defendant demurred among other grounds, to the jurisdiction, that the action was not brought in the proper county; and the general term of the Superior Court, affirming the judgment of the special term, sustained the demurrer both on the ground that the action was brought for the recovery of real property in a distant county, and that it was brought for the determination of an estate right or interest in such property, and that consequently the Superior Court had no jurisdiction of the action.

Sandford, J., in delivering the opinion of the court, cites and approves a decision just previously made, by Mr. Justice Mitchell in this court, in which he took the same view of the extent of the provision referred to, and applied it to an action *brought for the purpose of declaring a conveyance of land fraudulent, and to have the grantee claiming the land as his own declared to be a trustee for others.*

An order must be made changing the place of trial in this case from the city and county of New York to the county of Oneida, with $10 costs of this motion to abide the event.